An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-816

Filed 5 August 2026

New Hanover County, No. 20CR058428-640

STATE OF NORTH CAROLINA

v.

LARON CARTER, Defendant.

Appeal by Defendant from judgment entered 15 December 2023 by Judge Tiffany Peguise-Powers in New Hanover County Superior Court. Heard in the Court of Appeals 11 March 2026.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Robert P. Brackett, Jr., for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Jillian C. Franke, for Defendant.*

PER CURIAM.

Defendant Laron Carter appeals the trial court's judgment finding him guilty of first-degree murder and robbery with a dangerous weapon. Defendant argues the trial court failed to intervene *ex mero motu* during the State's closing argument. Defendant also asserts a claim for ineffective assistance of counsel. We hold that the

trial court did not fail to intervene *ex mero motu*, and Defendant did not receive ineffective assistance of counsel.

## I.  Factual and Procedural History

This appeal arises from Defendant's conviction of first-degree murder and robbery with a dangerous weapon.  Evidence presented at trial tended to show:

Defendant visited his girlfriend, Taytum Herrick, in Wilmington on 12 November 2020.  Herrick lived with another couple, Hailey Berardi and Thomas Duran.  While Defendant was in Wilmington, Duran saw a Snapchat from the victim, Gavin Dozier, who lived locally.  In the Snapchat, Dozier stated "he wanted to buy a firearm."  Duran knew Defendant brought a nine-millimeter pistol with him to Wilmington; Duran asked Defendant if Defendant would sell Dozier the pistol.  Duran then showed Dozier the pistol over video chat.  Dozier agreed to meet in the Walmart parking lot to buy the pistol and sell Duran some marijuana cartridges.

Duran drove Defendant's car to Walmart around 3:45 P.M.  Defendant sat in the rear seat on the passenger side of the car.  Dozier arrived in the parking lot, got out of his car with a backpack, and climbed into Duran's front passenger seat.  Shortly after Dozier climbed into Duran's car, Defendant held a gun to Dozier's head.  Defendant began pistol-whipping Dozier.  Duran stabbed Dozier three times in his right knee. During the struggle, Defendant shot Dozier in the chest.  Defendant then got out of the car, opened the front passenger side door, pulled Dozier out of the car, and left him on the ground.  A man in a nearby car saw Dozier on the ground and

used his dash camera to begin recording. The dash camera also saved five minutes immediately preceding the bystander pressing the record button.

First responders transported Dozier to the hospital, where he was pronounced dead. His cause of death was a fatal gunshot wound to the chest. Examination also revealed three stab wounds near Dozier's knee as well as blunt force trauma to his head.

Defendant and Duran returned to Duran's apartment with Dozier's backpack and cellphone and removed the bloody car seat cover from the passenger seat of Defendant's car. Duran showered and washed his knife in the bathroom sink he shared with Berardi. Defendant went to Herrick's bathroom to shower while Herrick wiped down Defendant's gun. Defendant then asked Herrick to help him clean his car. After showering and cleaning his car, Defendant returned to Fayetteville. Herrick placed Defendant and Duran's clothes into a trash bag and placed the trash bag in the back seat of Berardi's Jeep. At some point, Duran disposed of his knife in a pond.

Defendant was arrested on 15 March 2021. Trial commenced on 6 December 2022. During Defendant's opening statement, defense counsel informed the jurors that he would call a witness identified as "Antwain" to testify. Defense counsel stated Antwain would testify that Duran initially asked Antwain, and not Defendant, to accompany him to Walmart. However, Antwain was not called to testify.

The State, during its closing argument, commented on Defendant failing to call

Antwain to the stand to testify and stated there was "absolutely no doubt about this case or about [D]efendant's guilt. In fact, you might be here right now and say: Really, the only mystery is why have I been here a whole week[.]" The State also stated its reason for offering Duran a plea deal:

> So why did we deal with Thomas Duran? I'll tell you why. First, he helped at an early stage and you should get rewarded for that—sometimes, not always. Second of all, he took responsibility and, by doing that, gave this family a certain outcome, legal closure, and spared them a public trial with all these terrible details, including to have to watch their son's autopsy and last moments on this earth and hear about how he's a drug dealer and a robber. So yes. That's called a plea deal. When someone doesn't do that, we call it a trial. And we put 12 people in a box. We call them a jury. And you take responsibility for them and for the verdict. And that's what we're asking for.

On 15 December 2023, the jury found Defendant guilty of first-degree murder and robbery with a dangerous weapon. Defendant timely appeals.

## II. Analysis

Defendant argues the trial court erred by failing to intervene *ex mero motu* during the State's closing argument. Defendant asserts the prosecutor's closing argument was improper because it suggested (1) there was no doubt as to Defendant's guilt, and (2) that Defendant exercising his right to a trial caused the victim's family pain and suffering.

Defendant also argues he received ineffective assistance of counsel when his counsel promised the jurors that they would hear from Antwain. Defendant contends,

- 4 -

because Defendant's counsel never called Antwain to testify, Defendant's counsel damaged his own and Defendant's credibility.

## A. Trial Court's Failure to Intervene *Ex Mero Motu*

"The standard of review for alleged improper closing arguments absent timely objection 'is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*.'" *State v. Wardrett*, 261 N.C. App. 735, 740, 821 S.E.2d 188, 192 (2018) (citations omitted). Thus, we conduct a two-step test: "(1) whether the argument was improper; and, if so, (2) whether the argument was so grossly improper as to impede the defendant's right to a fair trial." *State v. Huey*, 370 N.C. 174, 179, 804 S.E.2d 464, 469 (2017).

An argument is grossly improper if "the prosecutor's statements went so far beyond the 'parameters of propriety' that the trial court is forced to intervene to 'protect the rights of the parties and the sanctity of the proceedings.'" *State v. Reber*, 386 N.C. 153, 163, 900 S.E.2d 781, 789 (2024) (citation omitted). The argument must be viewed in the overall context in which it was asserted. *State v. Alston*, 341 N.C. 198, 239, 461 S.E.2d 687, 709 (1995).

The appellant must demonstrate a "reasonable possibility that, had the error[s] in question not been committed, a different result would have been reached at the trial." *Huey*, 370 N.C. at 185, 804 S.E.2d at 473 (quoting N.C. Gen. Stat. § 15A-1443(a) (2015)).

Section 15A-1230(a) of the North Carolina General Statutes provides:

> During a closing argument to the jury an attorney may not become abusive, inject his personal experiences, express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice. An attorney may, however, on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue.

N.C. Gen. Stat. § 15A-1230(a) (2025). "Closing arguments must (1) be devoid of counsel's personal opinion; (2) avoid name-calling and/or references to matters beyond the record; (3) be premised on logical deductions, not on appeals to passion or prejudice; and (4) be constructed from fair inferences drawn only from evidence properly admitted at trial." *State v. Dalton*, 369 N.C. 311, 317, 794 S.E.2d 485, 489 (2016) (cleaned up).

### 1. *Referring to Defendant's Guilt*

Defendant first challenges the State's comment regarding Defendant's guilt. Defendant argues his trial was unfair because the State denigrated his choice to exercise his constitutional right to a jury trial, and therefore the trial court should have intervened *ex mero motu*. We disagree.

In *State v. Wardrett*, 261 N.C. App. at 743, 821 S.E.2d at 194, the prosecutor argued the defendant was "absolutely guilty of the crime he's charged with" and that "[t]here's just no question about it." *Id.* However, the prosecutor asserted the defendant was guilty based upon their analysis of the State's evidence. *Id.* at 744, 821 S.E.2d at 194. Our Court deemed this argument to be improper, but not so

grossly improper as to deprive the defendant of a fair trial. *Id.* Furthermore, in *State v. Waring*, 364 N.C. 443, 515, 701 S.E.2d 615, 660 (2010), the prosecutor used phrases such as, "I believe" or "I think" to express their personal belief of the defendant's guilt. *Id.* Our Supreme Court still held these statements were not grossly improper. *Id.*

In this case, the State's prosecutor stated there was "absolutely no doubt about this case or about [D]efendant's guilt. In fact, you might be here right now and say: Really, the only mystery is why have I been here a whole week[.]" Assuming, without deciding, that this statement was improper, we cannot hold it was so grossly improper as to deprive Defendant of a fair trial. Though impassioned and colorful, the prosecutor's statements were derived from what the evidence showed and the logical deductions and feelings the jury could have. The prosecutor made the statements in closing argument after the State's discussion of reasonable doubt and the jury's assignment to assess the credibility of witnesses. Also, unlike in *Waring*, the prosecutor in this case did not use phrases such as "I believe" or "I think" to express their personal belief of Defendant's guilt, referring instead to what the jury could determine from the evidence.

Based on the State's evidence of Defendant's guilt, it is unlikely the prosecutor's statements swayed the jury. For example, Herrick and Berardi testified that Defendant and Duran had blood on their clothes. Herrick also testified that Defendant said he accidentally shot Dozier. Dozier's DNA was found on Duran's car seat cover and in the bathroom of Herrick's apartment. Duran testified that

Defendant had the gun, struck Dozier with it, and then shot Dozier. There was also evidence that the gun Defendant owned was capable of firing the round that killed Dozier. Thus, the statements from the prosecutor were not grossly improper and the trial court did not err.

## 2. *Referring to Defendant's Failure to Accept a Plea Arrangement*

Defendant next challenges the State's discussion regarding Defendant's decision to go to trial. Defendant asserts such discussion disparaged his decision to go to trial by pitting his decision against Duran's decision to accept a plea arrangement. Defendant argues the prosecutor blamed Dozier's family's exposure to traumatic evidence on his exercise of his constitutional right to a trial, and therefore the prosecutor improperly appealed to the jury's emotions. We disagree.

In *State v. Goins*, 377 N.C. 475, 479, 858 S.E.2d 590, 594 (2021), our Supreme Court analyzed a similar scenario. The prosecutor in *Goins* referred to the defendant's decision not to accept a plea deal. *Id.* However, our Supreme Court noted that this was a small portion of the prosecutor's argument. *Id.* Our Supreme Court then observed the amount of evidence presented to the jury and determined that there was ample evidence to allow a jury to convict the defendant. *Id.* at 479–80, 858 S.E.2d at 594. Last, our Supreme Court noted the trial court's jury instructions, which included that the defendant's decision to plead not guilty could not be taken as evidence of guilt. *Id.* This instruction cured the improper argument advanced by the prosecutor. *See id.* (citing *State v. Goss*, 361 N.C. 610, 626, 651 S.E.2d 867, 877

(2007)).   Thus, our Supreme Court determined the argument was not grossly improper, and therefore a new trial could not be awarded.  *Id.* at 481, 858 S.E.2d at 595.

In this case, like in *Goins*, the prosecutor's statement regarding Defendant's decision not to accept a plea arrangement was a small portion of the closing argument.  *Id.* at 479, 858 S.E.2d 594.  The jury was presented with multiple witnesses' testimonies naming Defendant as the perpetrator and dashcam footage of the event which was presented to the jury.  *Id.* at 480, 858 S.E.2d 594.  Last, the trial court in this case instructed the jury that a plea of not guilty is not evidence of Defendant's guilt.  Assuming, *arguendo*, the comments were grossly improper, they were cured by the jury instruction.  *Goss*, 361 N.C. at 626, 651 S.E.2d at 877. Therefore, the trial court did not reversibly err.

## B. Ineffective Assistance of Counsel

Defendant argues he received ineffective assistance of counsel at trial when his attorney promised to call a witness identified as "Antwain" during opening arguments but then failed to call the witness during trial.  We disagree.

A claim for ineffective assistance of counsel is reviewed *de novo.  State v. Perry*, 254 N.C. App. 202, 207, 802 S.E.2d 566, 571 (2017) (citation omitted).  A defendant has a right to effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 19 and 23, of the North Carolina Constitution. *Id.* (citing *State v. Braswell*, 312 N.C. 553, 561, 324

S.E.2d 241, 247 (1985)).

The test for ineffective assistance of counsel in North Carolina is set forth in *Braswell*, 312 N.C. at 562, 324 S.E.2d at 248 (adopting the test for ineffective assistance of counsel from *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). First, the defendant must show his counsel was deficient. *Id.* "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* To make a showing that counsel was deficient, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." *State v. Givens*, 246 N.C. App. 121, 124, 783 S.E.2d 42, 45 (2016) (quoting *State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (2006)). To establish prejudice, the defendant must demonstrate there is a reasonable probability that, but for counsel's deficiency, the outcome of the proceeding would have been different. *Id.* Reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Id.* Furthermore, we operate under the presumption that counsel had a sound trial strategy. *Id.*

We may decide a claim for ineffective assistance of counsel on the merits absent a previous hearing on a motion for appropriate review "when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001) (citations omitted). We hold the cold record sufficient to review the claim on the merits.

Defendant relies on *State v. Moorman* to support his contention that his counsel was deficient. 320 N.C. 387, 358 S.E.2d 502 (1987). In *Moorman*, defense counsel, during his opening, told the jury he would prove his client was "physically and psychologically incapable" of committing rape. *Id.* at 393, 358 S.E.2d at 506. Counsel failed to provide any evidence of that assertion. *Id.* The defendant in *Moorman* later stated he never told his counsel that he was incapable of rape, and that he was unaware of what his counsel meant by that statement. *Id.* At the defendant's hearing on a motion for appropriate relief, the judge who presided at the defendant's trial testified that defense counsel used pain medication that caused him to slur his speech and appeared to fall asleep during trial. *Id.* at 392–93, 358 S.E.2d at 502. Additionally, because consent was the only defense supported by the evidence, the case turned on the credibility of the defendant and defendant's counsel. *Id.* at 402, 358 S.E.2d at 511. Our Supreme Court concluded that the defense counsel's failure to adequately prepare for trial; his failure to produce evidence to support his opening; and his use of medications that caused slurred speech and drowsiness, lethargy, and inattentiveness during trial, counsel was deficient and the defendant's trial was prejudiced. *Id.*

Here, Defendant's counsel stated the jury would hear from Antwain:

> At this apartment at Tesla Park on November 12th, in preparation to sell this firearm, Thomas Duran asks a fellow named Antwain, who is at the apartment: "Hey, Antwain, will you come with me to Walmart?" He doesn't ask [Defendant]. He asks Antwain. And you're going to

> hear from Antwain. We're calling Antwain. State's not calling Antwain. Because Antwain said: "No thanks. Man, I'm—my girlfriend's picking me up. I'm—I'm out of here. I'll catch you later, Thomas." And then Thomas turns and asks [Defendant] to go.

This is distinguishable from *Moorman*. The only assertion by Defendant in this case that Defendant's counsel was deficient stems from the failure to call Antwain. In *Moorman*, evidence showed that the defense counsel was unprepared for trial and failed to adequately participate in the trial. *Id.* at 402, 358 S.E.2d at 511. Here, Defendant's counsel participated in the trial and there is no suggestion that he was underprepared. We do not find deficient performance based upon Defendant's counsel's failure to call Antwain.

Here, Defendant asserts that his counsel's "promise" to call Antwain was the key defense, and therefore the failure to call Antwain led to Defendant's conviction. However, unlike *Moorman*, the statement to call Antwain to testify was not the turning point in the trial. *Id.* In this case, as previously discussed, there were multiple witnesses examined and plenary evidence submitted regarding Defendant's role during Dozier's killing.

We cannot hold that Defendant's counsel erred, or that, in light of the evidence, the testimony forecasted during his opening would have had an impact on the outcome of the trial. Thus, Defendant's ineffective assistance of counsel claim is without merit.

### III. Conclusion

For the reasons provided above, the State's statements regarding Defendant's guilt and failure to accept a plea agreement were not so grossly improper as to hold that the trial court should have intervened *ex mero motu*. Additionally, Defendant has not shown his counsel was prejudicially deficient, and therefore we find no ineffective assistance of counsel.

NO PREJUDICIAL ERROR.

Panel consisting of Judges HAMPSON, GRIFFIN, and STADING.

Report per Rule 30(e).